The first case is Bamba v. U.S. Department of Homeland Security. So, Mr. Bamba, you're representing yourself. You've got 10 minutes to argue. Please come up. You've reserved two minutes for rebuttal, but that gives you eight minutes now to start. So the clock, you can see the clock. We'll keep an eye on that, but the floor is yours. Your Honor, I just wanted to clarify that I'm representing my father. Oh, I'm sorry. Okay. Thank you. You're right. I didn't know that. I just saw the name. I get the sheet and we'll have to do conclusions, but thank you for being here. No problem, Your Honor. Thanks for having me. May it please the Court? Yes. Your Honor, from October 2008 to 2024 when Mr. Bamba, the appellant, separated from the agency, his relationship with the agency has overall been tumultuous. Dating back from 2016, Mr. Bamba submitted emails to the agency informing them that he was being harassed and bullied by James Ward. James Ward, a white male, a manager with the Department of Homeland Security. Unfortunately, his complaints were ignored, not addressed. The bullying persisted, and on March the 5th, 2018, inside his office, James Ward would assault Mr. Bamba, the appellant, and attempt to shoot him. What led to the assault on March the 5th, 2018? Mr. Bamba, as a financial manager, is responsible for approving the funding of the agency that he worked for. Mr. Ward sent Mr. Bamba an email requesting funding, and Mr. Bamba informed him that there was no funding available. Mr. Ward, insisting, decided to belligerently walk down to Mr. Bamba's office. He walked down to his office and says, either you submit the, you either approve the funding, or you turn in your ID, and you leave. Mr. Bamba. Just if I can jump in for a moment, Mr. Bamba. So with regard to this particular incident, part of what is, I guess, part of your burden in this instance is to show that this assault regarding Mr. Ward wasn't on the basis of race. And so, what is there on the record, or what has been asserted to support that the basis for this was race? As opposed to, as I think we're getting to, this idea that Ward was upset about this denial of funding. So in the record, or at least in the pleadings, you find that the appellant, he notes that Mr. Ward had a history of assaulting black male employees. Unfortunately, but fortunately, Mr. Bamba was the last male employee that was assaulted before the agency decided to terminate him from the agency. But you said that's in the pleadings, and that this is a summary judgment. This was a summary judgment motion, and so the issue is what's in the record, and what's a disputed fact. So what's in the record about that? Because it was a 56.1 statement that you largely didn't object to. So as it pertains to the 56.1 statement, Your Honor, we did not submit a 56.1 statement, which the courts generally, when I look at, one second, the court's indulgence, Chapman v. Ouellette, if the plaintiff doesn't file a summary judgment motion or a statement disputing the facts, they're considered admitted. However, under federal rules of civil procedure, 56, if a party fails to properly submit or address another party's assertion, the court may give the party an opportunity to properly address the facts. As it pertains to that, Your Honor, I believe in the record, the appellant asserts that he believed that it was a result of his race, that he was assaulted by James Woods. It's not enough that he believed it. There have to be some facts that would support it, right? So outside of that, Your Honor, that's what he stands on as it pertains to the assault. After the assault in April 2018, there was a job announcement for the mission support manager position. The job announcement was posted April 2018. In May 2018, the appellant applied for the position. In August of 2018, Yingping Chang was interviewed for the position. On August 26, 2018, the announcement was canceled. On August 30, 2018, the announcement was reposted to close March 1, 2019. On February 10, 2019, it was noted that Yingping Chang was selected for the position. On appeal before the court today, Your Honor, is the wrongful selection issue. The appellant, from the record, is able to establish that he's African American, or he identifies as black African American, to establish that he's a member of a protected class. In the record, the appellant is able to establish that he qualified for the position as he submits his resume that shows that he has two master's degrees, a master's in financing, a master's in information systems. And at the time when he applied for the position, he had 10 years of experience working as a financial manager. Right, but I mean, so the agency provided a non-discriminatory basis for the non-selection, right? And that was that the first application was deficient. It didn't list his prior job qualifications and grade. And then his resubmission was late. It was after the first wave of applicants had already submitted. And so that meant that he wouldn't be interviewed or even eligible for the position unless the first group of applicants were deemed not acceptable. At least that's what's in the 56.1 statement from DHS and not objected to by you. So am I wrong about that? Am I wrong about the facts that I've just described? Those facts are disputed. So the appellant's position is that he submitted his application with the proper SF-50. The appellee's position is that upon submitting the applications, the applications went to OPM. OPM created a list of eligibles, and the list of eligibles was sent over to the agency. According to the USA jobs posting and the USA jobs outline of the hiring process, the appellant's position is that his application with his SF-50 went directly to the agency manager who is able to discern from his SF-50 that he worked in the position for over a year's time. And they personally know him that he worked for over a year's time. The argument offered by the agency or the appellee we believe is just pretext for discrimination because if the first group of applicants were not selected, Ying-Ping Chang, who was selected over the appellant who was more qualified than her, if the first group which she interviewed August the 3rd were not selected because they put a new announcement posting on August the 30th, then her application should not have been considered moving forward the subsequent announcement when it was reposted on August the 30th. So considering that, the agency from the appellee's, from the appellant's perspective deliberately decided not to hire the appellant despite the fact he properly submitted the application in May and subsequently submitted it in September. Right, so are you, just to clarify, with regard to the second application, second application was submitted after the deadline? The deadline I thought was for the second posting was September 7th, 2018. And wasn't Mr. Bamba's, the appellant's application submitted after that date? Yes, it was submitted after that day, September, I believe September the 12th. He submitted, he resubmitted the application with the job announcement closing March of 2019. So yes, with the small framework that they provided for resubmission of the application, yes, he submitted the application outside that deadline. Nonetheless, he did submit his application within the job announcement. But looking back at the hiring process, if Yingping Chang was interviewed August the 3rd for the position and come August the 30th, the position is canceled because they haven't found anybody appropriate for the position and then is reposted. But that wasn't the case. It wasn't that they didn't find anyone. In fact, they found that she was the most qualified and she was the highest ranked. They found that there was something wrong with the posting and so they reopened it. Isn't that the way it went? We, well, the appellant's position is that no, essentially that process was just undertaken to bypass the standard process of hiring and to discriminate against the appellant for hiring and for the position. All right. Well, you've reserved two minutes for rebuttal. We'll now hear from Ms. O'Gallagher. Thank you. You may proceed. Thank you, Your Honor. Good morning and may it please the Court. I'm Alyssa O'Gallagher from the United States Attorney's Office for the Southern District of New York and I represent the defendant's appellees. No reasonable fact finder could conclude on the record now before the Court that the plaintiff was discriminated against on the basis of his race and sex when he was not selected for the supervisory position for which he applied or that he was subjected to a hostile work environment because of his race based on an altercation with a fellow government employee. As this Court has repeatedly held, a non-moving summary judgment motion but that is all the plaintiff relies upon here. He does not point to any admissible substantiated evidence in the record as his counsel just conceded to excuse me that the government's legitimate non-discriminatory reasons for not selecting him for the supervisory position were pretextual and he doesn't even appeal the district court's conclusion that he failed to offer any evidence that the altercation with his fellow employee, Mr. Ward, that was just discussed occurred because of his race. But even if he had, he does again does not point to any admissible substantiated evidence that he was mistreated because of his race. At summary judgment, this Court demands that a plaintiff offer some hard evidence substantiating his version of events. That's from the D'Amico versus City of New York 132 F3D at 149. But the plaintiff has failed to do so here. For these reasons, the court should affirm the district court's grant of summary judgment to the government and I welcome any questions from the panel. All right, thank you very much Ms. O'Gallagher. Mr. Bamba, you have two minutes for rebuttal. Thank you, your honors. Your honors, the USA job.gov website lists the steps taken for selecting the candidates. It indicates that the application will go directly to the agency's hiring management. The agency's management worked with the appellant for 10 years and it was- Can I just jump in for a second? I take your argument to be that although the perhaps technical requirements were not fulfilled, that the individuals who ultimately got the application would have known or could have figured out the appellant's experience. But if the posting requests specific information and says, yes, you have to submit this form that shows your time and grade to have the response of, well, perhaps that wasn't submitted, but they could have figured it out. That's not, they're giving a legitimate reason. If they're saying to apply, you have to do X, Y, and Z. I don't understand the response of that. Well, maybe X, Y, and Z weren't done, but they could have figured it out. That's how I'm hearing what you're saying. Based off how the appellant construes the SF-50 that was submitted to the Courtyard the SF-50 demonstrates that he starts in 2018, that he started with a particular salary, and at that time he's making an above salary at a different step. All of this information on the SF-50 is indicia that he's been in the position for over one year and that was submitted to the and in compliance with his requirement, it went directly to the agency on top of that, that knows that he's worked there and he's been there for 10 years. So when they don't select him and they select somebody who's less qualified than him, has less experience than him, that he at one point supervised for four years, the only conclusion that the appellant can glean is that he was discriminated against in the selection process. We see the evidence that they bring forth to explain why he was not selected, but it's contradictory with what the USA Jobs site explains the hiring process is, and that's why the appellant believes that there's at least a genuine disputed material fact to warrant the remand of this case and to proceed to trial. All right, well thank you Mr. Bonner and Mr. Gallagher. We will reserve decision. Thank you. Have a good day and a nice weekend.